| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| CARLA TERESA RODRÍGUEZ BERNIER<br>Peticionaria<br><br>JOSÉ MIGUEL RIVERA SANTOS<br>Recurrido<br><br>EX PARTE | KLCE202400458 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso Civil Núm.: JDI2014-0178<br>Salón: 405<br><br>Sobre:<br><br>Divorcio |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Pérez y la Jueza Prats Palerm.

**Rivera Pérez, Jueza Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 8 de mayo de 2024.

Comparece la Sra. Carla T. Rodríguez Bernier (en adelante, Sra. Rodríguez Bernier o peticionaria), mediante un recurso de *certiorari* y una moción en auxilio de jurisdicción, nos solicita la revisión y paralización de los efectos de la *Resolución* emitida el 18 de abril de 2024 y notificada el 22 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Ponce ("TPI"). Mediante este dictamen, el TPI le ordenó al joven Carlos José Rivera Rodríguez hacer gestiones ante varias entidades para que compareciera a la vista señalada en el caso representado por un abogado.

Por los fundamentos que expondremos, se modificada la *Resolución* recurrida para dejar sin efecto la parte en que se le ordena al joven Carlos José Rivera Rodríguez realizar gestiones por sí mismo para obtener servicios legales y, así modificada, se confirma.

### I.

El 14 de abril de 2023, notificada el 21 de abril de 2023, el TPI emitió una *Resolución,* mediante la cual relevó al Sr. José M. Rivera

Número Identificador

SEN2024_____

Santos (en adelante, Sr. Rivera Santos o recurrido) del pago de la pensión alimentaria de su hijo, el joven Carlos José Rivera Rodríguez, por este haber advenido a la mayoría de edad. En desacuerdo con esta determinación, la Sra. Rodríguez Bernier presentó el 14 de junio de 2023 un recurso un *certiorari* ante este Tribunal de Apelaciones solicitando su revisión.[1] Luego de varios trámites procesales, el 29 de febrero de 2024, dictamos y notificamos *Sentencia* revocando la *Resolución* emitida por el TPI.[2] En nuestro dictamen, concluimos lo siguiente:

> "[L]a madre peticionaria, presentó distintas evaluaciones médicas realizadas al joven a través de los años, su diagnóstico de autismo y las alegadas limitaciones que posee para regir sus bienes y persona. Ante el escenario y condiciones presentadas al TPI, este tenía que haber actuado dándole un debido proceso de ley, debió tomar las medidas cautelares y celebrar una vista al amparo de la Regla 15.2 de las de Procedimiento Civil de manera que pudiera implementar las medidas necesarias de carácter provisional para cerciorarse de la capacidad de Carlos J. Rivera Rodríguez de entender los procedimientos, incluyendo designarle un defensor judicial y representación legal. Ello está cimentado en que la emancipación ni la mayoría de edad de los hijos releva a los padres de alimentar a los hijos si lo necesitan."

Finalmente, ordenamos la devolución del caso ante el foro apelado para la continuación de los procedimientos conforme a lo resuelto.

El 20 de marzo de 2024, notificada el 26 de marzo de 2024, el TPI emitió una *Resolución*, mediante la cual señaló una vista para el 1 de mayo de 2024.[3] En la *Resolución*, se ordenó la comparecencia de todas las partes "y del joven Carlos Rivera Rodríguez junto a su representación legal."[4]

---

[1] Acogimos el recurso de *certiorari* como uno de apelación y conservamos el alfanumérico KLCE202300676 asignado.
[2] Apéndice de la *Petición de Certiorari*, págs. 3-17.
[3] Apéndice de la *Petición de Certiorari*, págs. 18-19.
[4] *Íd.*, pág. 19.

El 2 de abril de 2024, la Sra. Rodríguez Bernier presentó una *Solicitud para que se Aclare Orden y Otros Extremos*.[5] En lo pertinente, la Lcda. Rodríguez Bernier indicó lo siguiente:

> "5. Cónsono con lo anterior, al ser expresamente revocado el relevo de pensión alimentaria, existe una deuda por concepto de pensión alimentaria vencida y no pagada al día de hoy que asciende a $8,545.13. **Siendo así, este tribunal tiene la obligación, en cumplimiento con lo resuelto por el Honorable Tribunal de Apelaciones, ordenar que dicho pago sea cubierto en su totalidad por el Lcdo. José Miguel Rivera Santos, con carácter de urgencia.**
>
> 6. Por otro lado, también el foro revisor ordenó que, precisamente por los planteamientos sobre la presunta incapacidad del joven Rivera Rodríguez para entender los procesos, este tribunal tenía que celebrar una vista donde evaluara al joven y decidiera la necesidad de un defensor judicial para este. **Siendo así, será imposible que el joven Rivera Rodríguez comparezca con representación legal ya que no tiene la capacidad necesaria para contratar una abogada o abogado y depende de lo que, luego de ser evaluado por este foro, se determine la necesidad de nombrarle un defensor judicial, que fungirá como abogada o abogado de este."** (énfasis suplido).

El 15 de abril de 2024, el Sr. Rivera Santos presentó una *Réplica en Cumplimiento de Orden a Solicitud para que se Aclare Orden y Otros Extremos*[6] y, el 16 de abril de 2024, la Lcda. Rodríguez Bernier presentó una *Oposición a Réplica en Cumplimiento de Orden a Solicitud para que se Aclare Orden y Otros Extremos*.[7]

Al día siguiente de que la Secretaría del Tribunal de Apelaciones enviará el mandato,[8] el 18 de abril de 2024, notificada

---

[5] Apéndice de la *Petición de Certiorari*, págs. 21-27.

[6] Apéndice de la *Petición de Certiorari*, págs. 24-27.

[7] Apéndice de la *Petición de Certiorari*, págs. 28-34.

[8] En *Colón y otros v. Frito Lay*, 186 DPR 135, 153-154 (2012), el Tribunal Supremo explicó que, "[l]uego de paralizados los procedimientos en el foro de origen, éste pierde su facultad para atender las controversias planteadas en alzada y no vuelve a adquirir jurisdicción sobre ellas hasta tanto el tribunal revisor le remite el mandato correspondiente." Lo anterior tiene el efecto ineludible de que "toda actuación realizada por el foro revisado, luego de que los asuntos han quedado paralizados y previo a recibir el mandato, será completamente nula." *Íd.* Por lo tanto, debido a las importantes implicaciones de índole jurisdiccional que ello conlleva, los tribunales recurridos deben estar atentos al desarrollo del caso a nivel del tribunal revisor y a la etapa procesal en la que éste se encuentra, previo a retomar acción en el mismo.

el 22 de abril de 2024, el TPI emitió la *Resolución* recurrida.[9]
Mediante este dictamen, el TPI dispuso lo siguiente:

> "Con el beneficio de la posición de ambas partes este Tribunal determina lo siguiente:
>
> El joven Carlos José Rodríguez Bernier debe hacer gestiones en Servicios Legales de Puerto Rico, Pro Bono o Clínica de Asistencia Legal de la Universidad Católica de Puerto Rico para comparecer a la vista señalada con representación legal.
>
> En cuanto al reclamo de la Sra. Rodríguez Bernier del pago de la pensión alimentaria, No Ha Lugar en este momento."

En desacuerdo con lo dispuesto en este dictamen, la Sra. Rodríguez Bernier acudió ante nos el 24 de abril de 2024 mediante el presente recurso de *Petición de Certiorari* y *Solicitud en Auxilio de Jurisdicción*. En su recurso de *certiorari*, la Sra. Rodríguez Bernier señala el error siguiente:

> ERRÓ EL TPI, AL EMITIR UNA RESOLUCIÓN IGNORANDO TOTALMENTE LO RESUELTO POR ESTE HONORABLE TRIBUNAL EN SU SENTENCIA EMITIDA EL 29 DE FEBRERO DE 2024, CONSTITUYENDO DICHA ACCIÓN EN UN ABUSO DE DISCRECIÓN Y UN FRACASO DE LA JUSTICIA.

El 24 de abril de 2024, emitimos *Resolución* concediéndole al Sr. Rivera Santos hasta las 11:30 a.m. del 25 de abril de 2024 para expresar su posición con respecto a la moción en auxilio de jurisdicción.

El 25 de abril de 2024, emitimos *Resolución* declarando Ha Lugar la *Solicitud en Auxilio de Jurisdicción* presentada por la Sra. Rodríguez Bernier.

El 6 de mayo de 2024, el Sr. Rivera Santos presentó *Memorando en Oposición a Petición de Certiorari*.

Así, contando con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

---

[9] Apéndice de la *Petición de Certiorari*, págs. 1-2.

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". *IG Builders et al. v. BBVAPR*, *supra*, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, supra, pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, pág. 337. Al respecto, la Regla 52.1 de Procedimiento Civil, *supra*, dispone específicamente que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57, o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales,

asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.* Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

A su vez, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

La precitada regla mandata que, como foro apelativo, evaluemos si alguna de las instancias enumeradas anteriormente es de aplicación a la petición de *certiorari*. De alguna estar presente, podemos ejercer nuestra discreción e intervenir con el dictamen recurrido. Por el contrario, estaremos impedidos de expedir el auto, y por lo tanto deberá prevalecer la determinación del foro recurrido. Los criterios antes transcritos sirven de guía para poder determinar,

de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008).

De ordinario, los tribunales apelativos no debemos intervenir con las decisiones discrecionales de un Tribunal de Primera Instancia a menos que se demuestre que dicho foro incurrió en un abuso de discreción, y que nuestra intervención evitaría un perjuicio sustancial. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 435 (2013). En todo caso, el criterio rector al momento de evaluar si un tribunal ha abusado de su discreción es la razonabilidad de la determinación impugnada, y su fundamento en un sentido llano de justicia. *Íd.,* págs. 434-435.

**B.**

El defensor judicial "es un tutor especial nombrado [por el tribunal] para que represente a un incapacitado o a un menor en un pleito en específico". *R & G Premier Bank of P.R. v. Registradora,* 158 DPR 241 (2002); *Rivera y Otros v. Bco. Popular de Puerto Rico*, 152 DPR 140 (2000). Este nombramiento obedece al poder de *parens patriae* que tiene el Estado, cuyo único y principal objetivo es velar por el bienestar de los menores e incapaces. *Crespo v. Cintrón,* 159 DPR 290 (2003); *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985).

En virtud de la Regla 4.4(c) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.4(c), en todos los casos en que la parte demandante, su abogado o abogada o la persona que diligencie el emplazamiento tenga fundamento razonable para creer que la persona que será emplazada está incapacitada mentalmente, deberá notificarlo al tribunal para que éste proceda de acuerdo con lo dispuesto en la Regla 15.2(b) de Procedimiento Civil, 32 LPRA Ap. V., R. 15.2(b). Así pues, partiendo de dicha solicitud, decidirá el tribunal si procede o no el nombramiento de un defensor judicial a la parte sujeto a un

criterio de conveniencia, según se desprende del texto de la Regla 15.2 (b) de Procedimiento Civil, *supra.*

Una vez el foro de primera instancia quede informado sobre la posibilidad de que un demandado esté incapacitado, y existiendo fundamento razonable para ello, este vendrá obligado a hacer una determinación sobre el estado mental de la parte, de acuerdo con las disposiciones de la Regla 15.2(b) de Procedimiento Civil, *supra.* A, base de tal determinación es que el tribunal decidirá si procede o no el nombramiento de un defensor judicial a la parte. *Rivera y Otros v. Bco. Popular, supra.*

De modo, que el tribunal tiene la discreción de establecer cualquier otra medida para proteger los intereses de esta parte, cuya determinación estará guiada por el principio rector de todo nuestro ordenamiento procesal de lograr que los casos sean resueltos de una forma justa, rápida y económica. *Id.*

**C.**

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley." Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1.

El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Al amparo del debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *Román Ortiz v. OGPe*, 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881

(1993); *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562 (1992); *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265 (1987). Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra; *López Vives v. Policía de Puerto Rico*, 118 DPR 219 (1987).

Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. *Board of Regents v. Roth*, 408 US 565 (1972); *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274. Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274; *Morissey v. Brewer*, 408 US 471, 481 (1982). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. Véase: *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274.

La jurisprudencia ha establecido diversos requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado y (7) que la decisión se base en el récord. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra.

Por otra parte, la Regla 1 del *Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico,* 4 LPRA Ap.

XXXVIII,[10] dispone que: "[r]ecae sobre el Estado el deber de garantizar el acceso a la representación legal a personas de escasos recursos económicos, como corolario al principio constitucional de igualdad ante la ley del Artículo II, Sección 1 de nuestra Constitución. Al amparo de este deber, se implementa un sistema de asignaciones de oficio para procedimientos de naturaleza civil y penal en los tribunales de Puerto Rico."

A su vez, la Regla 2 de este Reglamento preceptúa que:

> "[...] Estas Reglas se interpretarán de forma que promuevan el acceso a los tribunales mediante la representación legal gratuita a personas de escasos recursos económicos que cualifiquen como indigentes al amparo de las normas y los procedimientos establecidos en este Reglamento y de los criterios económicos establecidos por la Oficina de Administración de los Tribunales.
>
> Nada de lo dispuesto en estas reglas **limita la discreción del tribunal de ordenar la asignación de oficio de un abogado o de una abogada para que represente a una persona indigente en un procedimiento judicial <u>no reconocido de forma expresa por este Reglamento si</u>, a juicio del tribunal, dicha asignación promueve la sana administración del sistema judicial y la equidad procesal entre las partes, como corolario al imperativo del acceso a la justicia**, conforme a los parámetros establecidos en este Reglamento." (Énfasis y subrayado nuestro)

Por su parte, y en lo aquí pertinente, la Regla 5 del Capítulo II intitulada *Alcance del Reglamento: procedimientos judiciales aplicables* establece que:

> "(b) *Procedimientos de naturaleza civil.* Este Reglamento aplicará a los procedimientos judiciales de naturaleza civil en los cuales se haya reconocido el derecho a la asistencia de abogado o abogada de una persona natural, así como a aquellos **en los que estén implicadas las necesidades fundamentales del ser humano**,[11]

---

[10] El 12 de octubre de 2018, nuestro Tribunal Supremo aprobó el *Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico,* 4 LPRA Ap. XXXVIII, (2022), el cual entró en vigor el 1 de enero de 2020.

[11] La Regla 4 (v) del Reglamento para la asignación de abogados y abogadas de oficio de Puerto Rico, *supra*, se define el concepto *Necesidades fundamentales del ser humano* de la forma siguiente:

> "Se refiere a los procedimientos judiciales de naturaleza civil dispuestos en este Reglamento en que estén implicados asuntos sobre vivienda, sustento, salud, seguridad y los derechos de los padres y las madres sobre sus hijos e hijas menores de edad, tales

los cuales incluyen, entre otros que se puedan establecer mediante directriz por la Oficina de Administración de los Tribunales los siguientes:

[…]

(c) *Discreción del tribunal.* De forma excepcional, este Reglamento también aplicará, a los procedimientos judiciales no reconocidos de forma expresa en los incisos (a) y (b) de esta regla cuando el tribunal **considere que ordenar la asignación de oficio promueve la sana administración del sistema judicial y la equidad procesal entre las partes, en aras de garantizar el acceso a la justicia**. Antes de proceder con la asignación de un abogado o una abogada de oficio al amparo de este inciso, el tribunal queda facultado para requerir a la parte indigente que demuestre las gestiones realizadas para obtener la representación legal de alguna entidad que ofrece servicios legales gratuitos y que tales servicios fueron denegados. (Énfasis nuestro)

(d) *Factores aplicables a las asignaciones en procedimientos de naturaleza civil.* Previo a la asignación de un abogado o abogada de oficio en un procedimiento judicial de naturaleza civil, el tribunal sopesará los factores siguientes:

(1) la capacidad de la persona indigente para representarse a sí mismo de manera adecuada en el caso;

(2) la renuncia voluntaria de la persona indigente a ejercer su autorepresentación;

(3) la inhabilidad de la persona indigente para obtener representación legal por otros medios, para lo cual acreditará al tribunal las gestiones realizadas para procurar dicha representación;

(4) la naturaleza y complejidad de la controversia a adjudicarse, tanto legal como fáctica, incluyendo la necesidad de realizar una investigación de los hechos en controversia;

(5) la viabilidad de una pronta disposición del asunto sin necesidad de asistencia de un abogado o una abogada para la persona indigente;

(6) el potencial mérito de las reclamaciones según surge de las alegaciones, para lo cual se podrá considerar si la acción ha sido presentada previamente;

(7) la etapa procesal en la que se encuentre el caso y el efecto que la asignación de oficio tendrá en su administración;

(8) la probabilidad de que la asignación de oficio acorte el término del procedimiento judicial y asista en una justa determinación;

---

como patria potestad, custodia, filiación, relaciones materno- y paterno-filiales, incluidas aquellas que se puedan establecer mediante directriz por la Oficina de Administración de los Tribunales."

(9)　si la asignación de oficio promueve los intereses de la justicia y el interés público, y

(10)　cualquier otro factor que el Tribunal exprese que resulta apropiado conforme a las circunstancias particulares del caso en el balance de los factores antes enumerados."

**III.**

Según reseñamos, estando pendiente la determinación sobre el estado mental del joven Carlos José Rivera Rodríguez, el TPI le ordenó a realizar gestiones por sí mismo para obtener servicios legales. En su recurso de *Certiorari*, la Sra. Rodríguez Bernier señala que erró el TPI "al emitir una resolución ignorando totalmente lo resuelto por este Honorable Tribunal en su sentencia emitida el 29 de febrero de 2024, constituyendo dicha acción en un abuso de discreción y un fracaso de la justicia."

Evaluado el presente recurso de *Certiorari* a la luz de los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, determinamos que procede su expedición por entender que existen fundamentos que justifican nuestra intervención con la determinación recurrida.

Como norma general, el Tribunal de Primera Instancia goza de amplia discreción para conducir y manejar el trámite de los casos ante su consideración. "Dicho foro es el que mejor conoce las particularidades del caso y quien está en mejor posición para tomar las medidas necesarias que permitan cimentar el curso a trazar y así llegar eventualmente a una disposición final." *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012). Los tribunales apelativos debemos abstenernos de intervenir con las determinaciones con las determinaciones que el foro primario emita en el sano uso de su discreción, salvo que se pruebe que este actuó con prejuicio, parcialidad, error manifiesto o en craso abuso de esa discreción. *Citibank v. ACBI*, 200 DPR 724, 735 (2018).

La discreción no es otra cosa que la facultad "para decidir en una forma u otra, esto es, escoger entre uno o varios cursos de acción". *Íd.*, (citando a *García v. Asociación*, 165 DPR 311, 322 (2005). No obstante, el sano ejercicio de la discreción judicial viene atado inexorablemente al concepto de la razonabilidad. *Íd.* El abuso de discreción se da cuando el juzgador (1) ignora sin fundamento algún hecho material, (2) le concede demasiado peso a un hecho inmaterial y funda sus determinaciones en dicho hecho o (3) cuando al examinar todos los hechos de un caso hace un análisis liviano e irrazonable. *Pueblo v. Custodio Colón*, 192 DPR 567, 588-589 (2015).

Examinada la *Resolución* recurrida a la luz del derecho expuesto, entendemos que la discreción del juzgador(a) de primera instancia no condujo en este caso a una determinación razonable. Ante la alegada incapacidad del joven Carlos José Rivera Rodríguez, determinamos que erró el TPI al ordenarle a realizar gestiones por sí mismo para obtener servicios legales. Juzgamos conveniente que se le nombre un defensor judicial como medida para proteger los intereses de esta parte en lo que se emite la determinación sobre su estado mental.

**IV.**

Por los fundamentos anteriormente expuestos, se modificada la *Resolución* recurrida para dejar sin efecto la parte en que se le ordena al joven Carlos José Rivera Rodríguez realizar gestiones por sí mismo para obtener servicios legales y, así modificada, se confirma.

**Notifíquese inmediatamente por la vía ordinaria, y vía telefónica a la representación legal de la parte recurrida.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones