ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| VANESSA NAVIA RIVERA<br><br>Recurrida<br><br>V.<br><br>MICHAEL GEORGE HANDZA<br><br>Peticionario | TA2026CE00020 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D CU2013-100<br><br><br>Sobre:<br>Custodia<br>Relaciones Paterno Filiares |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 25 de febrero de 2026.

Comparece el Michael George Handza (señor Handza o peticionario) y solicita que revisemos una *Resolución* emitida el 3 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] Mediante referido dictamen, el TPI declaró No Ha Lugar la solicitud del señor Handza de que se relevase al Dr. Luis A. Díaz Rosado como terapista del menor NHN, hijo del peticionario y de la Sra. Vanessa Navia Rivera (en adelante señora Navia Rivera o recurrida). Además, en dicha Resolución el Foro Primario acogió las recomendaciones contenidas en un *Informe de Progreso* presentado por el doctor Díaz Rosado el 16 de octubre de 2025, ordenó que se protegiera la relación terapeuta-paciente del menor y que se garantizara la continuidad del tratamiento

---

[1] Notificada al día siguiente. Anejos 2 y 19 del expediente ante este Tribunal en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). Tomamos conocimiento de lo informado por la parte peticionaria en su *Moción Informativa sobre Apéndice Ante Problemas Técnicos Confrontados con SUMAC y en Solicitud de Orden de Confidencialidad* de 12 de enero de 2026. En consecuencia, haremos referencia a los documentos del Apéndice según identificados en dicha comparecencia.

recomendado y dispuso que se mantuviera el teléfono principal del menor al concluir que este forma parte integral de su estabilidad emocional y de su rutina académica.

Con el beneficio de la comparecencia de la parte recurrida, nos encontramos en posición de resolver. Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari*.

**I.**

El caso ante nuestra consideración tiene su origen en diferencias surgidas entre las partes, luego de que, como consecuencia de *Solicitud de Sentencia por Estipulación*[2] presentada conjuntamente por las partes el 2 de noviembre de 2018, ese mismo día, pero transcrita el 5 de noviembre, se dictara *Sentencia* en la que acogieron los acuerdos informados por las partes respecto a la patria potestad, custodia, relaciones paterno filiales, la necesidad de un sicólogo en beneficio del menor, y la pensión alimentaria respecto al hijo procreado en común.[3]

Posteriormente, y como consecuencia de la insatisfacción del peticionario con varios asuntos, entre los que destacó que el menor utiliza un teléfono celular que pertenece al novio de su progenitora en lugar de usar el que el peticionario adquirió para su hijo, el 14 de julio de 2025 el señor Handza presentó una *Urgente Solicitud de Señalamiento*.[4] En dicha comparecencia, alegó que en el celular que no fue provisto por el peticionario el menor tiene aplicaciones y acceso a material de adultos, lo que, alegó, no ocurre con el celular adquirido por él, pues tiene restricciones que impiden que tenga acceso no adecuado a su edad, por lo que solicitó que se señalase una vista en la que establecieran directrices en protección del

---

[2] Íd., Anejos 1 y 3.
[3] Íd., Anejo 4.
[4] Íd., Anejo 8.

menor. También solicitó que se ordenase a las partes abstenerse de notificar, informar, mostrar documentos o dialogar asuntos relacionados a la controversia entre las partes con el menor. Considerada la oposición a dicha solicitud, el 11 de agosto de 2025 el TPI declaró No Ha Lugar la *Urgente Solicitud de Señalamiento*.[5]

Luego de trámites que resulta innecesario pormenorizar aquí, el 14 de noviembre de 2025 el señor Handza presentó su *Moción en Cumplimiento de Orden y Solicitud de Relevo de Funciones a Psicólogo Designado por el Tribunal para Brindar Apoyo Para Viajes Fuera de la Jurisdicción.*[6] En dicha comparecencia, el peticionario expresó su posición sobre un informe presentado el 16 de octubre de 2025 por el doctor Díaz Rosado en cumplimiento de *Orden* dictada el 11 de junio de 2025 por el TPI en la que se le requirió presentar un informe de progreso del menor.

En síntesis, sostuvo que el referido informe contenía información incorrecta, hecho que atribuyó a la circunstancia de que no se contó con su participación para la elaboración del mismo, siendo únicamente basado en la información provista por la parte recurrida y el menor. Establecido lo anterior, consignó que (1) estaba de acuerdo con la recomendación de que el menor tuviese un solo celular. Alegó que, dada la edad del menor, había que protegerlo y supervisar su uso del dispositivo. Sobre este aspecto, concluyó que toda vez que el adquirió el primer teléfono que tuvo el menor, ese debería ser el que se continuara utilizando; (2) manifestó su conformidad a que quede claro que mientras el menor se encuentra con él, se pueda comunicar libremente con la recurrida; (3) estableció su conformidad con la recomendación de que "los padres se mantengan en comunicación efectiva y constructiva para apoyar la estabilidad emocional del menor"; (4) en

---

[5] Íd., Anejo 11.  Notificada el 13 de agosto de 2025.
[6] Íd., Anejo 17.

cuanto a la recomendación de que se programarían sesiones de psicoterapia cada dos meses o según sea necesario, el peticionario consignó que consideraba esencial que se contase con un recurso que pudiera asistir tanto al menor como a sus padres. Sin embargo, afirmó que el doctor Díaz Rosado no podía ser dicho recurso, pues si bien reconoció que dicho profesional cumplió con su referido original de que el menor pudiera viajar sintiéndose seguro, consideraba había perdido la capacidad de brindar unidad y sostener comunicación con todas las partes, por lo que solicitó que fuera relevado de sus funciones como terapista del menor.

Examinados los escritos, el 3 de diciembre de 2025, el TPI emitió una *Resolución*, notificada al día siguiente, en la que resolvió lo siguiente:  (1) declaró No Ha Lugar la solicitud de relevo de funciones del doctor Díaz Rosado; (2) acogió las recomendaciones contenidas en el *Informe de Progreso* presentado el 16 de octubre de 2025 por el referido perito; (3) ordenó la protección de la relación terapeuta-paciente y que se garantizara la continuidad del tratamiento recomendado y, (4)  se mantendrá el teléfono principal del menor por ser parte integral de su estabilidad emocional y de su rutina académica.[7]

Aun inconforme, el señor Handza acudió ante nos mediante el recurso de epígrafe y le imputó al Foro Primario la comisión de los siguientes errores:

> **PRIMER ERROR: Erró el Tribunal de Primera Instancia al acoger las recomendaciones contenidas en el informe rendido por el terapeuta del menor, designado por el Tribunal, sin haber celebrado vista, a pesar de que del propio Informe y recomendaciones surgían asuntos sobre los cuales el padre con patria potestad había solicitado en más de una ocasión se celebrara vista urgente.**
>
> **SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la solicitud de relevo de funciones del Dr. Luis Díaz, terapeuta del menor, y ordenar la continuidad del tratamiento a pesar de los reclamos del padre, en cuanto a que el terapista tomó en consideración únicamente lo vertido por la madre y el**

---

[7] *Íd.*, Anejos 19 y 2.

**menor, a pesar de que este ejerce la patria potestad sobre su hijo.**

En esencia, el peticionario arguyó que el TPI incidió al quebrantar con sus determinaciones derechos dimanantes de la patria potestad respecto a su hijo. Sostuvo también que la forma en que el Tribunal llegó a sus determinaciones representó una violación a su debido proceso de ley. Ello, pues adujo que el TPI aceptó las recomendaciones del terapeuta sin haber señalado una vista evidenciaria tal y como lo solicitó en reiteradas ocasiones.

En esta dirección, sostuvo que la negativa del Foro Primario a celebrar vistas constituyó un abuso de discreción que implicó que se violara su debido proceso de ley y que se afectara el mejor bienestar del menor.

Por su parte, la señora Navia Rivera arguyó que los errores señalados no fueron cometidos. Sostuvo que en el presente caso no ha habido ninguna violación al debido proceso de ley del peticionario, y que su argumentación sobre este asunto lo que hace es demostrar el deseo del señor Handza de manejar el proceso judicial a su antojo, ignorando la discreción que poseen los tribunales respecto a pautar visas o no, según lo entienda necesario. Abundó que el expediente refleja que el TPI le ha brindado al peticionario el derecho a ser oído en todo momento.

**II.**

**A. *Certiorari***

El *certiorari* es un vehículo procesal extraordinario que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *McNeill Healthcare LLC v. Municipio De Las Piedras,* 206 DPR 391, 404 (2021); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338

(2012). La expedición del auto es discrecional, por tratarse ordinariamente de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita taxativamente las instancias en que procede expedir el auto de *certiorari* en asuntos interlocutorios civiles. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra; Scotiabank de Puerto Rico v. ZAF Corporation, et als.*, 202 DPR 478 (2019). Así, solo procede revisar resoluciones u órdenes bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o la denegación de mociones dispositivas. Como excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público u otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Si el asunto interlocutorio no se encuentra dentro de estas instancias, el Tribunal carece de autoridad para intervenir. Su propósito es evitar la dilación que implicaría la revisión inmediata de controversias que pueden atenderse en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486.

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 217 DPR __ (2025), R. 40, establece los criterios que orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari*. A saber, este Tribunal debe evaluar:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari,* no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra,* pág. 336. En tal caso, esta Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra,* pág. 405.

### B. Bienestar del Menor

Nuestro Tribunal Supremo ha establecido que los casos relacionados al derecho de familia están investidos del más alto interés público y tienen carácter *sui géneris. Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998). Los tribunales, en su poder de *parens patrie,* deben solventar los pleitos sobre patria potestad y custodia tras un análisis objetivo, sereno y cuidadoso de todas las circunstancias, con el único y principal objetivo de velar por el interés óptimo del menor de edad. *Ortiz v. Meléndez,* 164 DPR 16, 26-27 (2005); *Santana Medrano v. Acevedo Osorio,* 116 DPR 298, 301 (1985). En esa dirección, un tribunal puede ordenar la comparecencia de todas aquellas personas cuya participación resulte útil para dilucidar el curso de acción que mejor proteja el bienestar del menor. *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645 (2016). Asimismo, el foro se encuentra facultado para ordenar investigaciones de índole social que estime pertinentes. *Íd.*

Por otra parte, el Artículo 589 del Código Civil de 2020, 31 LPRA sec. 7241, dispone que la patria potestad es el conjunto de deberes y derechos que corresponden a los progenitores sobre la persona y los bienes de los hijos, desde que estos nacen hasta que alcanzan la mayoría de edad u obtienen su emancipación.

Adicionalmente, en virtud de la patria potestad, los progenitores tienen respecto a sus hijos las siguientes obligaciones:

(a) velar por él y tenerlo en su compañía;

(b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral;

(c) inculcarle valores y buenos hábitos de convivencia y el respeto a sí mismo y hacia los demás;

(d) corregirlo y disciplinarlo según su edad y madurez intelectual y emocional y castigarlo moderadamente o de una manera razonable; y

(e) representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandado. Art. 590 del Código Civil de 2020, 31 LPRA sec. 7242.

**III.**

En el presente caso, el señor Handza arguyó que el TPI incidió al acoger las recomendaciones del doctor Díaz Rosado, al igual que al negarse a relevarlo como terapeuta de su hijo. También, sostuvo que la negativa del Foro Primario en celebrar vistas configuraron una violación a su debido proceso de ley.

Tras un análisis sosegado de la totalidad del expediente ante nos, a tenor con los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40 y la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, determinamos abstenernos de ejercer nuestra función revisora sobre los asuntos señalados por el peticionario.

No encontramos que la determinación recurrida sea irrazonable, contraria a derecho o que constituya un fracaso a la justicia. Un examen del expediente ante nuestra consideración refleja que el TPI, en el ejercicio de su discreción y de las facultades de manejar los procedimientos ante su consideración, emitió un dictamen tomando en consideración el mejor bienestar del menor y disponiendo una serie de órdenes que a su juicio mejor cumplían dicho propósito. No percibimos que el foro *a quo* haya realizado una intromisión indebida de las facultades de la patria potestad del peticionario, ni consideramos, en atención al contenido de sus

comparecencias por escrito ante dicho Foro, que a éste se le haya privado su derecho a ser oído.

En atención a lo anterior, declinamos la invitación de la parte peticionaria en intervenir con la determinación del TPI.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones